UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                      :
LL FUNDS ADMINISTRATIVE AGENT, LLC,  :
                                     Plaintiff,   :            24 Civ. 5496 (LGS)
                                                      :
                    -against-                      :         FINDINGS OF FACT
                                                      :         AND CONCLUSIONS
FIFTH THIRD BANK, NATIONAL          :                 OF LAW
ASSOCIATION,                               :
                                    Defendant.   :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Below are the Court's findings of fact and conclusions of law pursuant to Federal Rule of

Civil Procedure 52 following a one-day bench trial conducted on March 3, 2025.  This case

arises from a dispute over $30 million placed in an escrow account in connection with a putative

indemnity obligation of the seller pursuant to a merger agreement.  Plaintiff seller seeks release

of the escrowed funds.  That relief is denied, and judgment is entered in favor of Defendant for

the reasons below.

### I.    BACKGROUND

On January 14, 2022, Defendant Fifth Third Bank, National Association, acquired

Dividend Solar Finance, LLC ("Dividend") from Plaintiff LL Funds Administrative Agent, LLC,

pursuant to an Agreement and Plan of Merger (the "Merger Agreement").  Plaintiff, the seller,

commenced this action on July 19, 2024, alleging that Defendant, the buyer, breached the

Merger Agreement by unlawfully retaining over $20 million in escrowed funds.

On March 3, 2025, a bench trial was held pursuant to the parties' agreement.  Plaintiff

called as a witness Scott Powers, Plaintiff's General Counsel.  Defendant called as witnesses

Monika Machen, Defendant's Senior Vice President and Associate General Counsel; and Jeff

Hinebaugh and Joshua Tanner Watkins, who are both partners at the law firm of Dinsmore &

Shohl LLP, which represented Dividend and Defendant in an underlying state investigation. Prior to trial, the parties submitted written direct testimony.  During trial, they conducted cross-examination and redirect.  Together the parties offered 119 exhibits, which were admitted into evidence.

## II.    UNDISPUTED FACTS

### A.  Indemnification under the Merger Agreement

Under the Merger Agreement, $30 million of the purchase price was placed in an escrow account (the "Escrow Fund") to be held until August 10, 2023.  The Escrow Fund would serve to indemnify Defendant for claims and losses suffered by Defendant resulting from "any breach of a representation or warranty of [Dividend] contained in t[he Merger] Agreement."  As relevant here, one such warranty made by Dividend was that it was not in "material violation of any applicable [l]aw" at the time of closing.  The Merger Agreement did not provide indemnification for a third party's violation of applicable law -- what the parties refer to as "derivative liability."

To seek indemnification under the Merger Agreement, Defendant was required to provide Plaintiff with notice "promptly, and in any event within twenty (20) days after receiving written notice of any third-party Claim or Action," that "is commenced or threatened that may give rise to" an indemnification claim.  The Merger Agreement defined "Action" as "any action, suit (whether civil, criminal or administrative), litigation, complaint, charge, claim, audit, assessment, inquiry, proceeding . . . or investigation . . . by or before any Government Authority."  The notice was required to include a "good faith estimate of the amount of Losses that may arise," a description "in reasonable detail" of the nature of the action and "the basis for the" indemnification request, and copies of "all papers served with respect to such Action."  If Defendant provided such notice, Plaintiff had thirty days to assume the defense of the noticed action.

### B.  The Civil Investigative Demands

#### i.  The September 2022 CID

Dividend's business was to work with solar installation companies to provide consumers with financing options to purchase and install solar panel systems.  In September 2022, the Kentucky Attorney General ("Kentucky AG") issued a civil investigative demand ("CID") to Dividend (the "September 2022 CID").  The September 2022 CID sought information about the solar installation companies with which Dividend had worked and about Dividend's lending practices.  After Dividend received the CID, Dividend's counsel spoke with a representative from the Kentucky AG's office, who was "very clear that the focus [of the CID] was on the installers."

#### ii.  The AG Coalition Letter

Approximately two months later, in November 2022, Dividend received a letter (the "AG Coalition Letter") from a coalition of various state attorneys general (the "AG Coalition") regarding Power Home Solar, LLC d/b/a Pink Energy ("Power Home"), a solar panel installer for whose customers Dividend had provided financing.  The AG Coalition Letter was prompted by Power Home's bankruptcy filing a month before in October 2022.  The AG Coalition Letter stated that Power Home "has been under investigation and/or litigation by the undersigned Attorneys General for suspected violations of [their] respective states' consumer protection laws as well as applicable federal statutes and regulations."  The AG Coalition Letter further stated that, in light of Power Home's bankruptcy, the AG Coalition believed that Dividend, along with other companies that had provided financing for Power Home customers, were "in the best position to provide immediate relief to impacted consumers."  While the AG Coalition Letter stated that "[t]he purpose of th[e] letter [was] to request" that the financing companies provide relief to Power Home's customers, the letter also explained that it "should not be construed as a

settlement offer, waiver, or suspension of any ongoing or contemplated investigations or other legal actions" that the AG Coalition might take against the companies.

### iii. The January 2023 CID

In January 2023, Dividend received a CID (the "January 2023 CID") from the Virginia Attorney General ("Virginia AG"). The January 2023 CID stated that it was "issued in connection with an investigation by the Attorney General into possible violations [of Virigina law] by [Dividend] and Power Home." In response to the January 2023 CID, Jeff Hinebaugh, acting as Defendant's outside counsel, spoke by telephone with representatives of the Virginia AG. They informed Mr. Hinebaugh that, while the Virginia AG was part of the AG Coalition investigating Power Home, the Virginia AG had decided to move forward with its own separate, concurrent investigation in response to constituent concerns. The Virginia AG's representatives also described how the AG Coalition believed Dividend could be held derivatively liable for Power Home's misconduct.

### iv. The February 2023 AG Coalition Tolling Agreement

On February 21, 2023, Tanner Watkins as counsel for Dividend participated in a call with the AG Coalition regarding the AG Coalition Letter. After the call, the AG Coalition and Dividend executed an agreement that tolled the statute of limitations for "any civil or administrative cause of action that the [AG Coalition] could bring against [Dividend] arising out of or relating to the advertising, marketing, sale, use, origination, facilitation, servicing, holding, execution, or enforcement of purchase and financing agreements for the purchase of solar energy products and services provided by Power Home" (the "Tolling Agreement"). The AG Coalition stated that the Tolling Agreement was "intended to facilitate further constructive dialogue between [the AG Coalition] and Dividend as [the AG Coalition] continue[d] its investigation into [Power Home] and related entities."

4

### v. The May 2023 CID

On May 3, 2023, the AG Coalition served Dividend with a CID (the "May 2023 CID"), requesting information regarding Dividend's relationship with Power Home, including "a list of all Consumers who financed the purchase of a Solar Power System" from Power Home through Dividend.  On May 4, Paul Fata, an Assistant Attorney General for the Kentucky AG, left Mr. Watkins a voicemail assuring him that the CID was not issued "because of anything that Dividend has done or hasn't done as it relates to the investigation, but just to continue its due diligence into the [Power Home] investigation."

### C. Defendant's Indemnification Claim

On July 13, 2023, the AG Coalition's settlement committee informed Dividend that it would be "presenting a settlement proposal to Dividend."  The settlement committee stated that the proposal would be similar to proposals offered to other companies that had financed Power Home's customers.

During an August 4, 2023, call between the AG Coalition and Dividend, the settlement committee outlined the terms of a settlement proposal.[1]  At the end of the call, the AG Coalition also informed Dividend that the coalition was turning its focus to Dividend's platform fees, which Dividend had charged Power Home.  The AG Coalition asserted that Dividend's platform fees violated state and federal law and that the AG Coalition would provide Dividend with a written notice shortly.

On August 10, 2023, in response to the August 4 call with the AG Coalition, Defendant submitted to Plaintiff a Notice of Potential Indemnification Claim (the "Indemnification Notice"), seeking indemnification related to the AG Coalition's verbal settlement demand

---

[1] The specifics of any settlement proposals exchanged between the AG Coalition and Dividend are not detailed in light of Defendant's request to preserve confidentiality of those settlement discussions.

regarding Dividend's platform fees.  The Indemnification Notice stated that, while the AG

Coalition demanded an "unspecified sum" in damages, Defendant estimated that the losses

associated with the AG Coalition's demand was "approximately $39,900,000," and Defendant

therefore "intend[ed] to retain the full amount of the Indemnity Escrow Fund."  The

Indemnification Notice did not request indemnification for any derivative liability Dividend

faced regarding Power Home related to the prior CIDs, nor did Defendant provide copies of the

AG Coalition Letter or CIDs Defendant had received relating to the investigation of Power

Home.

   After receiving the Indemnification Notice, Plaintiff requested "copies of any and all

correspondence that [Defendant] ha[d] received from any third party relating to the claims

described in the" notice.  Defendant objected to the request on the grounds that it had no written

correspondence to share because the AG Coalition's August 4, 2023, demand was made verbally,

but did provide Plaintiff with a redacted version of the May 2023 CID.  On September 8,  the

parties agreed to a non-disclosure agreement (the "NDA"), and Defendant provided Plaintiff

with an unredacted version of the May 2023 CID on September 15.  The NDA also stayed

Plaintiff's 30-day period to assume the defense of the AG Coalition's investigation into

Dividend's platform fees "until ten (10) business days after receipt by [Defendant] of a written

demand from the AG Coalition" (the "Grace Period").

   Several weeks later, on September 26, 2023, Plaintiff wrote to Defendant requesting the

release of the Escrow Fund on the grounds that Defendant's Indemnification Notice was

untimely and insufficiently detailed in violation of the Merger Agreement.  After the parties

failed to reach an agreement about the ultimate disposition of the Escrow Fund, they executed an

agreement dated December 11, 2023, which allowed for the release of the funds in escrow to

Plaintiff in three $10 million installments (the "Escrow Release Agreement").  The first

installment was scheduled for January 2, 2024, and the second and third were to occur on April 30, 2024, and June 30, 2024, "[a]bsent any written demand regarding platform fees from the [AG] Coalition."  In the event of a written demand, the Escrow Release Agreement required the parties to "work together on an expedited resolution process . . . as to the use of the Escrow funds to resolve any such demand."  Both parties reserved all of their rights including Defendant's right to seek repayment of funds released and Plaintiff's right to refuse repayment.

Pursuant to the Escrow Release Agreement, Defendant released the first installment of the Escrow Fund on January 2, 2024.  Later that day, the AG Coalition sent a written demand letter to Dividend (the "January 2024 Demand Letter"), including a demand for payment by Dividend.  Defendant informed Plaintiff of the January 2024 Demand Letter on January 17, 2024, and provided the full letter to Plaintiff on February 12, 2024, after the parties had agreed to keep the letter confidential.  In response to the January 2024 Demand Letter, Defendant refused to release the remainder of the Escrow Fund to Plaintiff.

In June 2024, Defendant and the AG Coalition met for a private mediation regarding the January 2024 Demand Letter.  On June 11, 2024, the AG Coalition provided Dividend with written settlement terms.  Plaintiff asked Defendant whether it "consider[ed] that correspondence to be a written demand from the AG Coalition" for purposes of the NDA's Grace Period.  On July 23, 2024, having received no response from Defendant, Plaintiff notified Defendant that Plaintiff was exercising its right to assume the defense of the matter.  Two days later, Defendant rejected as untimely Plaintiff's assertion of its right to assume the defense, arguing that the Grace Period began accruing when Defendant received the January 2024 Demand Letter.

### D.  This Action

On July 19, 2024, Plaintiff sued Defendant for breach of contract, seeking an order (1) directing that Defendant "immediately release the amounts remaining in Escrow" to Plaintiff, (2)

awarding damages for all harm caused by Defendant's "failure to timely release the Escrow" and (3) awarding attorneys' fees.  On September 9, 2024, Defendant filed a Counterclaim for breach of contract and seeking a declaration that: Defendant's indemnification claim is valid; Plaintiff's option to undertake the defense has expired; and the entirety of the Escrow Fund (including the previously disbursed $10 million) must be held pending resolution of Defendant's indemnification claim.

## III.    FINDINGS ON DISPUTED ISSUES OF FACT

### A.  Timeliness of Defendant's Notice of Indemnification

The first disputed factual issue is whether Defendant's Indemnification Notice was timely under the Merger Agreement.  The Court finds that the notice was timely.

Under § 8.5(a) of the Merger Agreement, "[i]f any Action is commenced or threatened that may give rise to" an indemnification claim, Defendant is required to provide to Plaintiff written notice of the third-party claim or action "promptly" and no later than twenty days "after receiving written notice of any third-party Claim or Action."  An "Action" is "any action, suit (whether civil, criminal or administrative), litigation, complaint, charge, claim, audit, assessment, inquiry, proceeding . . . or investigation . . . by or before any Governmental Authority."

Defendant submitted its Indemnification Notice on August 10, 2023, six days after the AG Coalition verbally notified Dividend of its allegation that Dividend's platform fees violate state and federal law.  The evidence shows that, prior to that verbal demand, (1) the focus of the AG Coalition's investigation was Power Home; (2) the September 2022, January 2023 and May 2023 CIDs regarding Power Home (collectively, the "Power Home CIDs") did not allege that Dividend's platform fees violate the law; (3) the AG Coalition reassured Dividend that the Power Home CIDs were issued "just to continue [the AG Coalition's] due diligence into the [Power Home] investigation," and not "because of anything Dividend has done or hasn't done"; (4) even

8

if Dividend faced liability for Power Home, such liability would be only derivative and not indemnified; (5) the AG Coalition's August 4, 2023, verbal demand was the first time the AG Coalition expressly informed Dividend that it was the subject of an investigation and (6) Dividend did not receive a written demand from the AG Coalition until the January 2024 Demand Letter. Based on this evidence, no action was verbally "commenced or threatened" against Dividend until August 4, 2023, and the threat was not communicated in writing until January 2024. Therefore, Defendant's August Indemnification Notice to Plaintiff, provided six days after the verbal threat of an action, was well within the Merger Agreement's requirement that such notice be given "promptly, and in any event within twenty (20) days after receiving written notice of any third-party Claim or Action" that "is commenced or threatened that may give rise to" an indemnification claim.

Plaintiff primarily argues that Defendant's Indemnification Notice was untimely because Defendant should have given notice as early as September 2022, when Dividend received the first CID from the AG Coalition. However, the record shows that the Power Home CIDs concerned a separate investigation into Power Home and was not aimed at Dividend or its platform fees.

Each of the Power Home CIDs and the AG Coalition Letter appeared on its face to focus on the misconduct of solar panel installers. None of these documents commenced or threatened an "Action . . . that may give rise to" an indemnification claim because Dividend was facing the possibility of only derivative liability for solar panel installers' actions. As evidenced by the Merger Agreement and confirmed by Plaintiff's General Counsel, Mr. Powers, "under the [M]erger [A]greement . . . there's no indemnification for derivative liability." Thus, Defendant could not have submitted an indemnification claim for the Power Home CIDs or the AG Coalition Letter.

Plaintiff relies on other evidence to argue that the Power Home CIDs concerned Dividend's platform fees.  This evidence is unpersuasive.  First, Plaintiff identifies specific language in the CIDs and AG Coalition's correspondence with Defendant as evidence that Defendant received "written notices of an 'Action' (investigation) that 'may' 'give rise' to liability in connection with Dividend's platform fees."  For example, Plaintiff relies on the November 2022 AG Coalition Letter, in which the AG Coalition stated that, while the letter concerned Power Home, it "should not be construed as a . . . suspension of any ongoing or contemplated investigations" the AG Coalition may take against Dividend and that the AG Coalition "reserved all rights."  However, that letter also stated that its "purpose" was to request Dividend's help in providing relief to consumers impacted by Power Home's bankruptcy.  Even if the AG Coalition's reservation of rights could be viewed as an indication of a "contemplated investigation[]" into Dividend, given the prior communications from the AG Coalition and Power Home's recent bankruptcy filing, any such investigation would have been understood to concern derivative liability, as the AG Coalition confirmed in the February 6, 2023, call with Defendant's counsel.

Plaintiff also relies on the Power Home CIDs, in which the AG Coalition referred to Dividend's "possible violations" of law and requested information regarding Dividend's financing arrangement and "fees," along with Dividend's responses to those requests.  However, the CIDs sought a wide range of information and gave no indication that Dividend's platform fees were the subject of investigation.  For example, the January and May 2023 CIDs included 38 and 21 interrogatories, respectively, each of which concerned different topics; only one interrogatory in each CID broadly concerned Dividend's fees.  The January 2023 CID asked Dividend to "[i]dentify all fees you charged Power Home," and the May 2023 CID requested "[d]ocuments relating to any fees, including . . . dealer incentive fees . . . ."  Plaintiff's argument

that the CIDs' language clearly indicates a potential investigation into Dividend's platform fees is further belied by correspondence from the AG Coalition itself, which informed Mr. Hinebaugh, Defendant's outside counsel, of the AG Coalition's belief that any liability would be derivative. Defendant's responses to the interrogatories regarding Dividend's "fees" in the January and May 2023 CIDs are not evidence of Defendant's awareness of potential platform fee liability, as Plaintiff suggests. Each response provides a description of the fees Dividend charged Power Home and clarifies that those fees were not "finance charge[s]" or "dealer incentive fees."

Plaintiff's reliance on the Tolling Agreement between Dividend and the AG Coalition is similarly misplaced. The Tolling Agreement gave no indication that the AG Coalition was considering the legality of Dividend's platform fees. Instead, the AG Coalition told Defendant that the agreement concerned its "investigation into [Power Home]."

Plaintiff also describes a May 30, 2023, spreadsheet in which Defendant calculated potential platform fee liability as evidence that Defendant "was assessing its platform fee liability back in May 2023 and not for the first time after the August 4 call." That Defendant may have considered its liability for platform fees does not outweigh the lack of any evidence that the AG Coalition had "commenced or threatened" (in the words of the Merger Agreement) an "Action" before August 4, 2023.

In short, the Court finds that (1) the AG Coalition's investigation into Power Home was separate from the AG Coalition's investigation into Dividend's platform fees; (2) prior to the AG Coalition's August 4, 2023, verbal demand, the AG Coalition had not "commenced or threatened" an investigation that "may give rise" to an indemnification claim and (3) consequently, Dividend's August 10, 2023, Indemnification Notice was timely.

### B. Adequacy of Defendant's Notice of Indemnification

Under the Merger Agreement, any indemnification claim had to include (1) a "good faith estimate of the amount of Losses that may arise," (2) a description "in reasonable detail [of] the nature of the Action to the extent known" and "the basis for the" indemnification request, and (3) copies of "all papers served with respect to such Action."  The evidence shows that, considering the limited information that the AG Coalition provided to Defendant in its August 4, 2023, verbal demand, Defendant's Indemnification Notice was adequate.

First, the Indemnification Notice provided a "good faith estimate" of potential losses.  The notice explained that the estimated fees was a specific amount in the tens of millions of dollars, based on the amount of "fees [that] were assessed by [Dividend] on over 3,500 transactions with Power Home prior to the Closing Date."  This calculation was reasonable considering the limited information available at the time.

Plaintiff argues that Defendant's estimate of losses in the Indemnification Notice was not made in "good faith" because Monika Machen's notes of the August 4, 2023, meeting and the AG's Coalition verbal demand did not reference monetary damages in connection with Dividend's platform fees.  Plaintiff argues that the notes contradict the statement in the Indemnification Notice that the AG Coalition requested an "unspecified sum" for platform fee violations.  Plaintiff's argument is unpersuasive.  Ms. Machen credibly testified that the AG Coalition alleged that Dividend's platform fees violated certain laws on the August 4, 2023, call, and that the conversation regarding platform fees was "under two minutes."  Ms. Machen also credibly testified on cross examination that, while her notes regarding the call were "accurate," they were not necessarily comprehensive, and that Defendant had internal "discussions afterwards about the meeting that more fully explained the context and the tenor of the [August 4, 2023] conversation."  After weighing the evidence, the Court finds by a preponderance of the

12

evidence that Defendant's estimate of potential losses was made in good faith despite the discrepancy between Ms. Machen's notes and Defendant's Indemnification Notice.

Second, the Indemnification Notice provided "reasonable detail" of the nature of the action and the basis for indemnification. The Indemnification Notice states that that the AG Coalition "assert[ed] that [Dividend's] assessment of a 'dealer' or 'platform' fee to installer Power Home . . . constitutes a violation of certain federal and state laws and regulations prohibiting the assessment of undisclosed finance charges to consumers." The Merger Agreement required Defendant to provide information only "to the extent known." As Ms. Machen credibly testified at trial, the AG Coalition's verbal demand regarding Dividend's platform fees was discussed in "under two minutes" and did not include a written demand or explanation. Thus, Defendant had limited information to provide. Plaintiff's argument that the Indemnification Notice lacked sufficient detail because it "made no mention of the CIDs" and underlying correspondence fails for the reasons discussed above -- namely, the prior CIDs concerned a separate investigation into Power Home and Dividend's potential derivative liability.

Third, Defendant's failure to include any "papers served with respect to" the "third-party Claim or Action" giving rise to its indemnification claim does not render the claim inadequate. The AG Coalition's demand regarding platform fees was verbal, and there were no papers to serve. While Plaintiff argues that "papers served" should have included the prior CIDs, that argument fails for the same reason that Defendant's Indemnification Notice was sufficiently detailed.

## IV.    CONCLUSIONS OF LAW

Plaintiff and Defendant both assert claims for breach of contract, arguing that the other breached the Merger Agreement. By its terms, the Merger Agreement is governed by Delaware

13

law.  "Under Delaware law, plaintiffs must establish the following three elements to succeed on

a breach of contract claim: (1) the existence of a contract, whether express or implied; (2) breach

of one or more of the contract's obligations; and (3) damages resulting from the breach."  *Geico*

*Gen. Ins. Co. v. Green*, 308 A.3d 132, 140 (Del. 2022).[2]  Here, the parties dispute only the

second element of breach.  For the reasons discussed below, judgment is entered for Defendant.

### A.  Plaintiff's Breach of Contract Claim

Plaintiff argues that Defendant breached the Merger Agreement because Defendant

provided an untimely and inadequate Indemnification Notice.  As discussed above, the evidence

shows that Defendant's Indemnification Notice was timely and adequate, and therefore did not

breach the Merger Agreement.

### B.  Defendant's Counterclaims

Defendant asserts two counterclaims.  The first, for declaratory judgment, seeks a

declaration, among others, that Plaintiff's "option to undertake defense of the [AG Coalition's

investigation into Dividend's platform fees] has expired."  Defendant's second counterclaim, for

breach of contract, asserts that Plaintiff breached the Merger Agreement and the Escrow

Agreement by refusing to return to the Escrow Fund the $10 million released to Plaintiff on

January 2, 2024.  As discussed below, relief is granted to Defendant on both of these claims.

### i.  Return of the $10 Million Disbursement to the Escrow Fund

Under the Merger Agreement, once Defendant submitted a valid indemnification claim to

Plaintiff (as determined above), the full $30 million must be held in the Escrow Fund until a

"Final Determination" -- i.e., a "final and non-appealable award, judgment or order" in the AG

Coalition action regarding Dividend's platform fees.  The $10 million disbursement was made

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

from the Escrow Fund to Plaintiff pursuant to the Escrow Release Agreement, accompanied by both parties' full reservation of rights.  Reading these two agreements together, Defendant is entitled to the return of the $10 million to the Escrow Fund.

Plaintiff argues that the return of the $10 million "is not possible at this juncture" because the money was "distributed over a year ago to stockholders, option holders, and others." However, under the Escrow Release Agreement, the parties agreed to the disbursement of the Escrow Fund subject to the parties' reservation of "all of their rights at law and equity, including under the Merger Agreement and Escrow Agreement."  The Escrow Release Agreement explicitly states that Defendant "reserves its claimed right to seek repayment of funds released from the Escrow prior to receipt of a written demand for platform fees from the Coalition to the extent the portion of any such demand . . . may be viewed as exceeding the amount remaining in Escrow."  Because the AG Coalition has made demands that may be viewed as exceeding the $20 million remaining in the Escrow Fund, Defendant is entitled to the return of the $10 million to the Escrow Fund, unless since the trial, a "Final Determination" of the AG Coalition action has occurred, in which case the amount shall be modified accordingly.

### ii.  Plaintiff's Right to Assume the Defense of the AG Coalition Action

Under the Merger Agreement, Plaintiff had thirty days after receipt of an indemnification claim "to assume and thereafter conduct the defense of" the underlying action.  Subsequently, the parties executed an NDA, dated as of September 8, 2023, in which they agreed to stay that 30-day period "until ten (10) business days after receipt . . . of a written demand from the AG Coalition" (the "Grace Period").[3]

---

[3] The Escrow Release Agreement, dated December 11, 2023, states that if the AG Coalition makes a written demand before June 30, 2024, the parties will work together on an expedited resolution process, including "a negotiation as to which entity will manage the defense of the Coalition's demand for platform fees."  The parties evidently did not negotiate a resolution to that issue.

Plaintiff did not timely exercise its right to assume the defense of the AG Coalition's investigation into Dividend's platform fees. The AG Coalition issued the January 2024 Demand Letter on January 2, 2024, and Defendant provided Plaintiff with the written demand on February 12, 2024. Thus, under the Grace Period, Plaintiff had until March 27, 2024, to assume the defense of the action. Because Plaintiff did not notify Defendant that it was exercising its right to assume the defense until July 23, 2024, Plaintiff's notification was untimely.

Plaintiff argues that the NDA's Grace Period was "fraudulently induced" because Defendant withheld "so much vital information" from Plaintiff. This argument fails because, as discussed above, the evidence shows that Defendant did not withhold information related to the AG Coalition's investigation into Dividend's platform fees. Moreover, under either the 30-day deadline in the Merger Agreement or the 10-day Grace Period in the NDA, Plaintiff's July 23, 2024, notification of its assumption of the defense was untimely.

## V.    CONCLUSION

For the reasons set forth above, judgment is entered for Defendant on Plaintiff's Complaint and on Defendant's Counterclaims. If there has been no final resolution of the AG Coalition's action regarding Dividend's platform fees, then Plaintiff shall return $10 million to the Escrow Fund, and no funds shall be disbursed from the Escrow Fund until such action is finally resolved. If there has been a final resolution of the AG Coalition's action regarding Dividend's platform fees, then Plaintiff shall return so much of the $10 million as may be necessary to satisfy any payment required for such resolution, and payment shall be made to Defendant from the Escrow Fund as contemplated by the Merger Agreement and Escrow Agreement. Plaintiff is not entitled to assume the defense of the AG Coalition's investigation.

To the extent that Defendant believes that it has a contractual basis to seek attorney's fees, costs or disbursements, it shall file a pre-motion letter by **September 26, 2025** stating its

16

intention to seek such relief.  Plaintiff shall respond to the letter by **October 3, 2025**.  By

**September 26, 2025**, Defendant shall file a letter on the status of the underlying AG Coalition

action.

Dated:  September 19, 2025
       New York, New York

                                        LORNA G. SCHOFIELD
                            UNITED STATES DISTRICT JUDGE